David C. Silver, Esq. (*pro hac vice forthcoming*)
Jason S. Miller, Esq. (*pro hac vice forthcoming*)
**SILVER MILLER**
4450 NW 126th Avenue - Suite 101
Coral Springs, Florida 33065
Telephone:      (954) 516-6000
E-mail: DSilver@SilverMillerLaw.com
E-mail: JMiller@SilverMillerLaw.com

Matthew Haicken, Esq.
**HAICKEN LAW, PLLC**
11 Broadway - Suite 615
New York, New York 10004
Telephone:      (212) LAW-TEAM  [(212) 529-8326]
E-mail: Matthew@HaickenLaw.com

*Counsel for Plaintiff Alexander Shin*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDER SHIN, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>AVA LABS, INC., a Delaware corporation,<br><br>    Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>Civil Action<br><br>JURY TRIAL DEMANDED |

Plaintiff ALEXANDER SHIN, an individual (hereafter referred to as "Plaintiff"), by and through undersigned counsel, hereby sues Defendant AVA LABS, INC., a Delaware corporation (hereinafter referred to as "Defendant" or "AVA LABS"); for monetary damages and for equitable relief.  As grounds therefor, Plaintiff alleges the following:

**NATURE OF THE ACTION**

1. This action arises from an Advisor Agreement between Plaintiff and AVA LABS that AVA LABS has unjustifiably breached.

2. Despite agreeing to provide Plaintiff both present and future compensation for his professional services under express written contractual terms, AVA LABS did neither.

3. Therefore, this is an action to enforce the terms of the parties' written agreements; or, in the alternative, to enforce Plaintiff's legal rights for proper compensation for the services he provided to AVA LABS.

4. As a result of AVA LABS's contractual breaches, Plaintiff has suffered economic harm for which he seeks compensatory and equitable relief.

## PARTIES, JURISDICTION, AND VENUE

### THE PARTIES

5. Plaintiff ALEXANDER SHIN is an individual domiciled in Tukwila, Washington and is *sui juris*.

6. Defendant AVA LABS, INC. ("AVA LABS") is a Delaware corporation with its principal place of business in New York, New York. At all times material hereto, AVA LABS operated an office in the City, County, and State of New York.

7. Upon information and belief, AVA LABS operates a wholly-owned subsidiary named Antarctica, Inc. ("Antarctica"), which operates from the same principal place of business in New York, NY as AVA LABS.

8. AVA LABS, as the one-hundred percent (100%) owner of Antarctica, is essentially the alter ego of that subsidiary; and the entities commonly operate under the shared tradename "AVA LABS." Upon information and belief, the entities are all dominated by the same individuals, use the same corporate decision-makers, the same resources, and the same business connections. Thus, they are essentially one-and-the-same business, regardless of the particular name under which each company's operations are conducted.

9. Because they share a unity of interest and resources, AVA LABS and Antarctica are collectively referred to herein and in their own internal corporate documents as "the Company."

10. In addition to AVA LABS, there are likely other parties who may be liable to Plaintiff, but about whom Plaintiff currently lacks specific facts to permit him to name these persons or entities as party defendants. By not naming such persons or entities at this time, Plaintiff is not waiving his right to amend this pleading to add such parties, should the facts warrant adding them.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and is an action between citizens of different states.

12. This Court has personal jurisdiction over AVA LABS because AVA LABS: (a) operates, conducts, engages in and/or does business within this jurisdiction; and/or (b) committed contractual or tortious breaches in this jurisdiction.

13. Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391 because the causes of action accrued in this jurisdiction.

## FACTS APPLICABLE TO ALL CAUSES OF ACTION

### AVA LABS'S BUSINESS

14. AVA LABS exists, in large part, to support the public blockchain it created and named "Avalanche."

15. According to its website: "*The Avalanche public blockchain is an internet-based distributed ledger and computing platform composed of many different and evolving components contributed by a wide variety of participants. Avalanche continues to grow and change through the efforts of its community.*"

16. AVA LABS's website goes on to explain its business purpose thusly:

   *Ava Labs, Inc. and its subsidiaries are active members of that community. We contribute to the continuing development, implementation, and maintenance of Avalanche and the Avalanche community by, among other things:*

   - *developing and implementing different types of software, such as smart contracts and*
   - *dApps, subnets, APIs, utilities and upgrades, and helping others do the same*
   - *staking tokens and operating one or more nodes/validators*
   - *creating written, video, and other content on our website, various social media platforms and elsewhere*
   - *generally being an overall resource to the community in a variety of other ways*

17. AVA LABS's website further explains the manner in which its representatives and associates are sometimes compensated for their efforts with AVAX tokens (the native token of the Avalanche blockchain) and other cryptocurrency assets:

   *We also provide support to the Avalanche Foundation in its various activities, for which we receive compensation. We, as well as our employees and other people and organizations associated with us, may receive, purchase, and sell various AVAX tokens and other cryptoassets (whether fungible or nonfungible tokens) created on or associated with the Avalanche public blockchain and the smart contracts and dApps that run on Avalanche.*

18. Plaintiff was among the "employees and other people" who served AVA LABS's interests by providing his professional services to AVA LABS.

### PLAINTIFF PROVIDED PROFESSIONAL SERVICES TO AVA LABS

19. On or about April 23, 2020, AVA LABS hired Plaintiff to, *inter alia*:

   (a) Attend quarterly strategy meetings,

   (b) Provide reasonable, timely responses to email requests from the Company and others associated with the Company, and

   (c) Make introductions to, and assist in the acquisition of, marquee customers, strategic partners, and key industry contacts.

Attached hereto as **Exhibit "A"** is a true and correct copy of the Advisor Agreement into which the parties entered memorializing the material terms of their relationship.

20. Under his employment arrangement with AVA LABS, Plaintiff was to work at AVA LABS's wholly-owned subsidiary Antarctic, and his compensation, in pertinent part, was expressed thusly:

> *Advisor shall not be entitled to receive cash compensation; however, Advisor shall be entitled to receive the equity compensation indicated on the signature page hereto at an exercise or purchase price equal to the fair market value of the Company's Common Stock, which will be documented in the applicable Stock Option Agreement or Restricted Stock Purchase Agreement to be entered into by Advisor and the Company as contemplated on the signature page hereto.*

\*     \*     \*

**ADVISOR COMPENSATION**

**Total Number of Shares of Common Stock**: 8,024 shares.
Subject to the approval of the Company's Board of Directors or its Compensation Committee, you will be granted an option to purchase 8,024 shares of the Company's Common Stock (the "Option"), subject to the terms and conditions applicable to options granted under the Company's 2018 Equity Incentive Plan (the "Plan") and the applicable stock option agreement. The exercise price per share of the Option will be equal to the fair market value per share of the Company's Common Stock on the date the Option is granted, as determined by the Company's Board of Directors. You will vest in 25% of the Option shares after 12 months of continuous service, and the balance will vest in equal monthly installments over the next 36 months of continuous service, as described in the Stock Option Agreement (to be executed by you).

**Total Number of Tokens Granted**: 360,000 AVA Mainnet Tokens
Subject to the approval of the Company's Board of Directors or its Compensation Committee, you will be granted a one-time right to purchase 360,000 AVA Mainnet tokens (the "Token"), as currently constituted, whereby such Tokens shall be: for your own account and not for further distribution; subject to the terms and conditions applicable to awards granted under the Company's 2019 Token Incentive Plan (the "Plan"), and applicable restricted token purchase agreement. The purchase price per Token will be equal to the fair market value of a Token on the date the Tokens are granted, as determined by the Company's Board of Directors. You will vest in 25% of the Restricted Tokens after 12 months of continuous service, and the balance will vest in equal monthly installments over the next 36 months of continuous service, as described in the applicable Form of Restricted Token Purchase Agreement (to be executed by you).

21. Plaintiff duly performed all obligations required of him under his employment with AVA LABS, including providing timely responses to e-mail requests from the Company and introducing the Company to key industry contacts.

**THE PARTIES REPLACED THEIR WRITTEN AGREEMENT WITH ANOTHER AGREEMENT**

22. At no time during his employment with AVA LABS was Plaintiff given a negative performance review.

23. In or about September 2020, however, Plaintiff's employment with AVA LABS was involuntarily terminated.

24. According to a September 23, 2020 letter sent to Plaintiff from Kevin Sekniqi (AVA LABS's co-founder and Chief Operating Officer) on behalf of AVA LABS:

> Dear Alex,
>
> As you know, the Avalanche mainnet was launched on Monday, September 21st. We would like to thank you for joining us on the journey thus far and to take this opportunity to update you on some of our future plans.
>
> Part of our strategy in the upcoming weeks to accelerate the growth and adoption of Avalanche will be to better align incentives for advisors with our broader company initiatives. We believe that the current structure of our advisory program needs to be improved to better serve you as an advisor as well as the future success of our company and platform.
>
> As a part of this effort, we are terminating your current advisor agreement as of five (5) days from the date of this notice and will be reaching out in the coming weeks to discuss a new deliverables-based grants structure. We very much hope to continue working together under this new approach to propel our forward momentum.
>
> Thanks again for your support!

25. AVA LABS expressed no disappointment with Plaintiff's services. Quite the contrary, AVA LABS expressed to Plaintiff its thanks for Plaintiff's services and its desire to continue working with Plaintiff under a "*new deliverables-based grants structure.*"

26. Despite terminating the Advisor Agreement, the parties mutually agreed that Plaintiff was still owed compensation for his service to AVA LABS.

27. In fact, Plaintiff and AVA LABS corresponded with one another for several months in an effort to memorialize the terms of a differentiated advisory program that would benefit both Plaintiff and AVA LABS.

28. Throughout their communications, AVA LABS continued to assure Plaintiff that he was indeed due his compensation and that regardless of the ultimate "legal language," Plaintiff would be compensated in accordance with the communications between the parties.

29. For example, in February 2021, AVA LABS represented the following to Plaintiff:

> On Tue, Feb 16, 2021 at 12:42 PM Carrianne Fairbairn <carrianne@avalabs.org> wrote:
>
> Hi Alex,
>
> I do apologize for how long this has taken. Unfortunately, because your terms are very specific, they do require proper legal language to ensure it's written correctly. I've been working with our counsel but they have a lot on their plate. I promise that we're writing the language so that your vesting and unlock occurs monthly, starting from Mainnet Launch (Sept 21st 2020), as you and Kevin had discussed. The date you sign the document won't matter, since we are setting your new schedule from the Mainnet launch.
>
> I hope this helps ease your mind. I also spoke with our counsel this morning and they said they should have the language shortly so I'm hoping to have this resolved for you by the end of this week.
>
> Apologies again for the delay but I appreciate your patience.
>
> Kind Regards,
>
> Carrianne

30. As an interim measure, the parties jointly executed a one-page letter on or about March 3, 2021 in which, *inter alia*, Plaintiff was granted a one-time right to purchase 37,500 AVAX Mainnet tokens subject to the terms and conditions of the Company's 2019 Token Incentive Plan and subject to a restricted token purchase agreement AVA LABS had to subsequently provide to Plaintiff for his review and execution.

31. AVA LABS did not provide, and Plaintiff therefore never reviewed or executed, a subsequent restricted token purchase agreement.

32.     Ultimately, Plaintiff and AVA LABS memorialized their compensation agreement in a master document titled "Option Grant ES-1" (the "Equity Award") that incorporated the terms of the following additional documents comprising the Antarctica, Inc. 2020 Equity Incentive Plan (the "Plan Documents" or the "Documents"):

    (a) Antarctica, Inc. 2020 Equity Incentive Plan - Plan Document

    (b) Antarctica, Inc. 2020 Equity Incentive Plan - Stock Option Award Agreement

    (c) Antarctica, Inc. 2020 Equity Incentive Plan - Notice of Exercise

    (d) Antarctica, Inc. 2020 Equity Incentive Plan - Notice of [Share] Redemption

Attached hereto as **Composite Exhibit "B"** is a true and correct copy of the Equity Award and the Plan Documents.

33.     Although the Plan Document identified the asset for which Plaintiff could opt to exercise his purchase right as a "Share" of Class A Common Stock of the Company, the Documents also provided a simple mechanism by which Plaintiff could redeem each Share for an AVAX Token instead on a one-to-one basis.

34.     Just as in the original Advisor Agreement, the parties agreed in the Equity Award and the Plan Documents that Plaintiff has the right to purchase/redeem 360,000 AVAX Tokens; and the price at which the parties agreed Plaintiff was entitled to exercise his purchase option is $0.325 (USD) per Share/Token:

|  | Quantities |
|---|---|
| Original quantity | 360,000 options (NSO) |
| Exercised quantity | 135,000 options |
| Remaining quantity | 225,000 options |
| Exercise price | $0.325 (USD) |

35. Furthermore, to uphold the spirit of the parties' original agreement, the parties agreed to backdate to September 2020 the "grant date" of Plaintiff's entitlement to exercise his purchase options:



36. As clearly stated in the Equity Award, the Equity Award and the Plan Documents "*set forth the entire understanding between [Plaintiff] and the Company regarding the Equity Award and supersede all prior agreements, promises and/or representations on that subject*":

When accepting this option grant on Carta, the option holder agreed to the following:

This Option Grant ES-1 (the "Equity Award") is subject to all of the terms and conditions set forth in this electronic issuance and all of the documents attached hereto (the "Documents"), all of which are incorporated herein in their entirety.

By entering your full name below, you acknowledge that this Equity Award was previously issued to you by the Company. You further acknowledge that as of the date of this award, this electronic issuance and the Documents set forth the entire understanding between you and the Company regarding the Equity Award and supersede all prior agreements, promises and/or representations on that subject. If there is any conflict between the provisions of this electronic issuance and those of the Documents, the provisions of the Documents will control.

Plan Documents:
Equity Incentive Plan:  Ava Labs - Antarctica Equity Incentive Plan 2020.09.12.pdf
Form of Option Agreement:  Ava Labs - Antarctica EIP - Stock Option Award Agreement 2020.09.12.pdf
Form of Exercise Agreement:  Ava Labs - Antarctica EIP - Stock Option Notice of Exercise 2020.09.12.pdf
Additional document:  Ava Labs - Antarctica EIP - Option Share Redemption Notice 2020.09.12.pdf

37. Within a few months following the parties' agreement to the terms included within the Equity Award and the Plan Documents, Plaintiff began exercising his purchase options through an electronic portal known as Carta.

38. As Plaintiff exercised one option after another, AVA LABS continued to authorize Plaintiff's exercise of his Company Share options as that right was given to him under the Equity Award and the Plan Documents.

39. Each time Plaintiff exercised his purchase options, he was required to reaffirm the parties' agreement that his "*option exercise is subject to all of the terms and conditions as set forth in the Equity Incentive Plan, Option Agreement, and the Exercise Agreement*" -- including the provision that those documents supersede all prior agreements, promises and/or representations on that subject.

40. As of the date of this filing, Plaintiff paid for and thereby exercised -- and AVA LABS approved[1] -- several of his then-available Company Share options (135,000 Shares already exercised, with another 7,500 Shares pending approval), which are summarized thusly:

### Exercises

The exercise of ES-1 for 7,500 shares began on 11/23/2021.

| Certificate | Exercise | Approver | Cash paid | Payment method | |
|---|---|---|---|---|---|
| > CSA-23<br>May 8, 2021 | 90,000 shares<br>Exercise: $0.325 | Christopher Lavery<br>May 9, 2021 | $29,250.00 | Cash<br>Transferred via ACH | Documents ⌄ |
| > CSA-42<br>June 18, 2021 | 7,500 shares<br>Exercise: $0.325 | Christopher Lavery<br>June 20, 2021 | $2,437.50 | Cash<br>Transferred via ACH | Documents ⌄ |
| > CSA-69<br>Sept. 1, 2021 | 22,500 shares<br>Exercise: $0.325 | Christopher Lavery<br>Sept. 1, 2021 | $7,312.50 | Cash<br>Transferred via ACH | Documents ⌄ |
| > CSA-84<br>Sept. 23, 2021 | 7,500 shares<br>Exercise: $0.325 | Christopher Lavery<br>Sept. 23, 2021 | $2,437.50 | Cash<br>Transferred via ACH | Documents ⌄ |
| > CSA-104<br>Oct. 23, 2021 | 7,500 shares<br>Exercise: $0.325 | Christopher Lavery<br>Oct. 24, 2021 | $2,437.50 | Cash<br>Transferred via ACH | Documents ⌄ |
| > Pending | 7,500 shares<br>Exercise: $0.325 | Christopher Lavery<br>Pending approval | $2,437.50 | Cash | |

---

[1] Christopher Lavery was, at all times material hereto, AVA LABS's Chief Financial Officer.

41. The above-listed Shares continue to increase by 7,500 Company Shares per month through and including April 2024, when all 360,000 Company Shares owed to Plaintiff should be made available to him.

### AVA LABS'S BREACH OF AGREEMENT BETWEEN THE PARTIES

42. Notwithstanding the written agreement(s) between the parties, Plaintiff's exercise of the rights granted to him under that agreement(s), and AVA LABS's approval of Plaintiff's exercise of his purchase options, AVA LABS has withheld from Plaintiff the compensation to which they had agreed.

43. Plaintiff has already exercised -- and AVA LABS has approved -- his option to purchase 135,000 Company Shares.

44. Plaintiff has expressed to AVA LABS his desire to redeem all ripe Company Shares for an equivalent amount of AVAX Tokens instead.

45. AVA LABS has expressed to Plaintiff its unwillingness to allow Plaintiff to redeem for an equivalent amount of AVAX Tokens all ripe Company Shares for which Plaintiff has paid.

46. As of the date of this filing, the market value of 135,000 AVAX Tokens is approximately $12,700,000.00 USD.

47. Plaintiff has also exercised -- pending approval by AVA LABS -- an additional 7,500 Company Shares. As of the date of this filing, the market value of 7,500 AVAX Tokens is approximately $705,000.00 USD.

48. As each new batch of 7,500 Company Shares becomes available for Plaintiff to exercise his purchase option -- and AVA LABS denies Plaintiff his right to receive those shares and redeem the Tokens for which he pays -- Plaintiff's damages will continue to increase.

49. Prior to filing this lawsuit, Plaintiff (through undersigned counsel) demanded that AVA LABS honor its contractual obligations and provide Plaintiff the compensation he is due. AVA LABS refused to comply.

50. Plaintiff duly performed all of his duties and obligations, and any conditions precedent to Plaintiff bringing this action have occurred, have been performed, or else have been excused or waived.

51. To enforce his rights, Plaintiff has retained undersigned counsel and is obligated to pay counsel a reasonable fee for its services.

### COUNT I – BREACH OF CONTRACT
### (the Equity Award and the Plan Documents)

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 51 above, and further alleges:

52. The Equity Award and the Plan Documents constitute a contract between Plaintiff and AVA LABS.

53. AVA LABS has breached the express terms of the Equity Award and the Plan Documents by, *inter alia*, failing to pay Plaintiff the sum due thereunder.

54. As a direct and proximate result of AVA LABS's breach of the Equity Award and the Plan Documents, Plaintiff has suffered damages in an amount to be demonstrated at trial.

### COUNT II – QUANTUM MERUIT

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 51 above, and further alleges:

55. At the request of AVA LABS, and during his tenure of professional service with AVA LABS, Plaintiff provided AVA LABS with his professional services in good faith.

56. AVA LABS freely accepted and retained Plaintiff's services.

57. Plaintiff reasonably expected to receive a fair measure of compensation from AVA LABS for those services.

58. The reasonable value of those services far exceeds the limited compensation Plaintiff received from AVA LABS.

59. Although Plaintiff has demanded payment from AVA LABS, AVA LABS has failed and refused to pay Plaintiff.

60. As a direct and proximate result of AVA LABS's acts and omissions, Plaintiff has suffered damages in a sum to be proven at trial.

### COUNT III – UNJUST ENRICHMENT

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 51 above, and further alleges:

61. At the request of AVA LABS, and during his tenure of professional service with AVA LABS, Plaintiff provided AVA LABS with his professional services in good faith.

62. AVA LABS freely accepted and retained Plaintiff's services.

63. AVA LABS has reaped the benefits of Plaintiff's professional services.

64. In addition, Plaintiff exercised several purchase options by paying AVA LABS the agreed-upon sums due to effectuate those options; however, AVA LABS has withheld from Plaintiff the Company Shares and AVAX Tokens for which Plaintiff paid.

65. It would be unconscionable and against the fundamental principles of justice, equity, and good conscience for AVA LABS to retain the substantial monetary benefits it has received from Plaintiff's services and from the cash payments Plaintiff has remitted without fairly compensating Plaintiff.

66. To remedy AVA LABS's unjust enrichment, the Court should order AVA LABS to fairly compensate Plaintiff for the windfall of profits Plaintiff produced for AVA LABS.

67. As a direct and proximate result of AVA LABS's acts and omissions, Plaintiff has suffered damages in a sum to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ALEXANDER SHIN, an individual, prays for entry of an award providing relief as follows:

(a) Entry of an award of monetary, actual damages and/or restitution, as appropriate;

(b) An Order requiring AVA LABS to specifically perform its written contractual obligations, including delivering to Plaintiff the Company Shares and AVAX Tokens Plaintiff which AVA LABS has withheld from him;

(c) Prejudgment and post-judgment interest to the extent allowed by the law;

(d) Awarding all costs, expenses, experts' fees, and attorneys' fees incurred in prosecuting this action; and

(e) Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

## RESERVATION OF RIGHTS

Plaintiff reserves his right to further amend this Complaint, upon completion of his investigation and discovery, to assert any additional claims for relief against AVA LABS or other parties as may be warranted under the circumstances and as allowed by law.

Respectfully submitted,

**SILVER MILLER**

By:   <u>*/s/ Matthew Haicken*</u>
     DAVID C. SILVER (*pro hac vice forthcoming*)
     E-mail: DSilver@SilverMillerLaw.com
     JASON S. MILLER (*pro hac vice forthcoming*)
     E-mail: JMiller@SilverMillerLaw.com
     4450 NW 126th Avenue - Suite 101
     Coral Springs, Florida 33065
     Telephone:    (954) 516-6000

- and -

Matthew Haicken, Esq.
**HAICKEN LAW, PLLC**
11 Broadway - Suite 615
New York, New York 10004
Telephone: (212) 529-8326
E-mail: Matthew@HaickenLaw.com

*Counsel for Plaintiff Alexander Shin*

Dated:  <u>April 5, 2022</u>